UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
ROY COMMER,

                    Plaintiff,

                                                00 Civ. 7913 (RWS)

          - against -
                                                O P I N I O N

GERALD McENTEE, JOHN SEFERIAN, THE
AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL
37, AFSCME, STANLEY HILL, MARTIN LUBIN,
MARK SHAPLO, ROBERT MEYER, RALPH PEPE,
LOUIS ALBANO, ROBERT MARIANO, UMA KUTWAL,
MICHELLE KELLER, JOHN DOES 1-30, and
RUDOLPH GIULIANi, as Mayor of the City
of New York,

                    Defendants.
-----------------------------------------X

A P P E A R A N C E S:



          SCHWARTZ, LICHTEN & BRIGHT
          Attorneys for Plaintiff
          113 University Place, 11th Floor
          New York, NY 10003
          By:  ARTHUR Z. SCHWARTZ, ESQ.
               Of Counsel

          SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX
          Attorney for Defendants Gerald McEntee, John Sefarian,
               AFSCME International, AFSCME District Council 37,
               Robert Mariano, Uma Kutwal, Michelle Keller and
               Ralph Pepe
          225 Broadway - 13th Floor
          New York, NY 10007
          By:  BARRY I. LEVY, ESQ.
               RUTH NAZARIAN, ESQ.
               Of Counsel

**Sweet, D.J.,**

Defendants Gerald McEntee ("McEntee"), John Seferian ("Seferian"), American Federation of State, County and Municipal Employees ("AFSCME"), Robert Mariano ("Mariano"), and Michelle Keller ("Keller") have twice moved for summary judgment and to dismiss the complaint of plaintiff Roy Commer ("Commer") under combinations of Rules 12(b)(1), 12(b)(6), and 56, Fed.R.Civ.P. Plaintiff Commer has moved to vacate the September 15, 2006 order of Magistrate Judge Andrew J. Peck, which dismissed Commer's claim for emotional distress damages. Commer has also moved, if necessary, for leave to amend the Second Amended Complaint to assert pendent jurisdiction over a claim under New York State contract law.

For the reasons set forth below, Defendants' motions are granted in part and denied in part, resulting in dismissal of all claims except: (1) an LMRDA § 101(a)(2) claim for compensatory, emotional distress, and punitive damages as against defendants McEntee and AFSCME; (2) an LMRDA § 101(a)(2) claim for reinstatement as against defendant AFSCME; and (3) an LMRA § 301(a) claim for reinstatement and compensatory damages as against defendant AFSCME for conduct prior to May 1, 2000. In addition, for the reasons set forth below, Plaintiff's motion to vacate Judge Peck's order is granted, and Plaintiff's motion for leave to amend the Second Amended Complaint is denied.

1

**The Parties**

Commer was a member of the AFSCME Municipal Employees, AFL-CIO and Local Civil Service Technical Guild ("Local 375"). Prior to May 1, 2000, Commer was the elected president of Local 375, and had held this position since 1998.

AFSCME is a national labor organization that represents more than 1.2 million members.  AFSCME is governed by its duly elected officers pursuant to a written constitution.

McEntee is a member and President of AFSCME, with an office and place of business at AFSCME International's headquarters in Washington, D.C.

Sefarian is a member of AFSCME and is the AFSCME Judicial Panel chairperson with an office and place of business at AFSCME's headquarters in Washington, D.C.

Mariano is a former member and treasurer of Local 375. Mariano has not been an officer of Local 375 nor a member of Local 375 or AFSCME since May 11, 2004.

Keller is a member of Local 375 and AFSCME.  She currently holds the position of First Vice President of Local 375.

2

Between 1998 and 2000, Keller held the position of Executive Committee Chair of Local 375.

## Prior Proceedings

Commer has litigated his claims against the Defendants in a series of actions arising out of his campaign and subsequent election as president of Local 375, as well as disciplinary actions taken against him by the Defendants culminating in a reprimand, a requirement to pay restitution, suspension from office, and expulsion from the union.[1]

Commer commenced this action as a pro se litigant on October 18, 2000, asserting claims based on alleged violations of Sections 101 and 501 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411, 501. The complaint was also construed to challenge the Defendants' interpretation of the Local 375 Constitution under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. On October 18, 2000, Commer also moved by order to show cause for a preliminary injunction to enjoin the Defendants from barring him from running for union office and reinstating him as president of Local 375.

---

[1] In addition to the instant action, Commer has previously filed two related actions with this Court: Commer v. AFSCME, No. 01 Civ. 4260(RWS) and Commer v. AFSCME, et al., No. 02 Civ. 7930(RWS). Commer has also previously filed another related action: Commer v. Keller, No. 98 Civ. 7808(AGS).

3

The motion was denied on November 13, 2000, Commer v. McEntee, 121 F. Supp. 2d 388 (S.D.N.Y. 2000) ("Commer I"), and the entire complaint was dismissed in Commer v. McEntee, 145 F. Supp. 2d 333 (S.D.N.Y. 2001) ("Commer II").

On appeal, the Second Circuit affirmed that decision with regard to the dismissal of the LMRA § 301 and LMRDA § 501 claims. Commer v. Giuliani, 34 F. App'x 802 (2d Cir. 2002) (unpublished opinion). However, the decision was vacated with regard to the dismissal of the LMRDA § 101 claim. Id. at 805-06. Under LMRDA § 101(a)(2), Commer claimed that he suffered retaliation for his exercise of free speech in taking various whistle-blowing actions. The Second Circuit held that the issue of whether the AFSCME Judicial Panel's intent was pretextual was controverted, and that because a motion to compel discovery by Commer had not been ruled upon prior to the dismissal of the claim, the Circuit would not reach the adequacy of Commer's proof to defeat a motion for summary judgment. The grant of summary judgment was vacated without prejudice to the Defendants' right to move again for such relief after the close of such discovery. Id. at 806.

In addition, the Second Circuit vacated the grant of summary judgment on the LMRDA § 101 claim as it related to Defendants associated with Local 375. Id. That claim had been dismissed based on a finding that the last private employees had disaffiliated from Local 375 as of mid-December 1999 and therefore

4

the local union Defendants were not subject to the LMRDA with respect to actions taken in 2000.  The Circuit held that because Commer had made discovery requests for documents with respect to factual findings and that such requests had not been ruled upon, "Commer is entitled, at a minimum, to know whether any such documents exist and to receive copies if they do."  Id.  In addition, the Second Circuit noted that Commer's claim of actions occurring prior to 2000 should be explicitly addressed.  Id.

By opinion filed September 24, 2003, Commer's LMRDA § 101(a)(2) claim against Kutwal, Keller and Mariano was dismissed for lack of LMRDA jurisdiction for conduct occurring after December 13, 1999, the date upon which all private employees had disaffiliated from Local 375.  Commer v. McEntee, 283 F. Supp. 2d 993, 997-98 (S.D.N.Y. 2003) ("Commer III") ("It is well settled that the provisions of the LMRDA do not apply to unions, or members of unions, that consist exclusively of public employees.").  In addition, summary judgment was granted on the grounds that the LMRDA § 101(a)(2) claim against Kutwal, Keller, and Mariano was barred by the doctrine of res judicata, having been litigated and adjudicated in the earlier action of Commer v. Keller, No. 98 Civ. 7808(AGS).  Id. at 998-1000.  Discovery proceeded on the remaining LMRDA § 101(a)(2) claims in this action.

On December 7, 2004, this Court granted Defendants' motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P.,

5

and dismissed Commer's remaining LMRDA § 101(a)(2) claim. <u>Commer</u> <u>v. McEntee</u>, No. 00 Civ. 7913(RWS), 2004 WL 2797053 (S.D.N.Y. Dec. 7, 2004) ("<u>Commer IV</u>"). The Court found that Commer had failed to present any material facts in support of the claim and that further discovery under Rule 56(f), Fed. R. Civ. P., was not appropriate. <u>Id.</u> at *8.   Due to Commer's <u>pro se</u> status at the time of the opinion, the Court granted Commer leave to submit additional materials and to move for further discovery within twenty days. <u>Id.</u>

By opinion filed May 27, 2005, this Court granted Commer's motion for reconsideration of the Court's December 7, 2004 order and opinion under Rule 60(b)(2), Fed. R. Civ. P., and upon reconsideration, vacated the order and opinion. <u>Commer v. McEntee</u>, No. 00 Civ. 7913(RWS), 2005 WL 1250214 (S.D.N.Y. May 27, 2005) ("<u>Commer V</u>"). The Court based its ruling on Commer's submission of newly discovered evidence in the form of an affirmation by then-Defendant Uma Kutwal, signed on December 24, 2004.[2] <u>Id.</u> at *2-3.

---

[2]   The December 24, 2004 Kutwal Affirmation stated in pertinent part as follows:

> I can now state that I and others, were used as a vehicle to achieve Roy Commer's ouster from his positions in the union and ultimately his membership by DC37/AFSCME to aid in quashing exposure by Roy Commer of their/friends years of corrupt activities.
>
> Meetings, to arrange strategy, timing, means and methods of action/charges to ensure the elimination of Roy Commer as a Union officer and Member, between myself and other Local 375 leaders with individuals from the defeated President Louis Albano's team and DC37 leaders began at least in August 1998. In addition, other meetings to aid in accomplishing the same ends of Local 375 leaders, other than myself, with DC37 and AFSCME leaders began on or about October 1998 and such contact

6

The Court found that the new Kutwal Affirmation satisfied the Rule 60(b)(2) standard set out in <u>United States v. International Brotherhood of Teamsters</u>, 247 F.3d 370, 391 (2d Cir. 2001). <u>Commer V</u>, 2005 WL 1250214, at *2-3.

In addition, the Court granted leave for Commer to amend his complaint pursuant to Rule 15, Fed. R. Civ. P., and for additional discovery pursuant to Rule 37, Fed. R. Civ. P. <u>Id.</u> at *3. In its opinion, the Court recognized that leave to replead had already been granted in the <u>per curiam</u> opinion of the Court of Appeals in the related case of <u>Commer v. AFSCME, et al.</u>, 390 F.3d 203, 205 (2d Cir. 2004). <u>Commer IV</u>, 2005 WL 1250214, at *2. In that related litigation, Defendants had consented to an amendment to the complaint in this action, permitting Commer to allege a violation of LMRDA § 101(a)(2) arising out of the actions of the Defendants to deprive Commer of his union membership. This particular LMRDA claim had not previously been presented in this action. Since Commer had failed to file an amended complaint at

was continued by direct meetings, fax, telephone and other means through 2001/Roy Commer's expulsion from Membership. Meetings to discuss what to do with a $3,700 check to the Local from Roy Commer, a check which the Local Treasurer later wrote had never been received by the Local (the current leadership of the Local and AFSCME had previously admitted in the internal Union judicial process documents that the check was received by the Local) were also held. A memo from a Local 375 employee to the former President Albano was circulated detailing their leadership/employee meeting held between the November 1997 and March 1998 Local elections (both of which Roy Commer won) to discuss methods of overthrowing/controlling a new President by the remaining Albano loyalists in Local leadership positions.
Kutwal Affirmation 2, Dec. 24, 2004.

7

the time of the May 27, 2005 opinion, the Court directed Commer to do so within thirty days.  Id.

On September 23, 2005, counsel appeared on behalf of Commer, thereby terminating his status as a pro se litigant in this action.

Plaintiff's First Amended Complaint was not filed until March 29, 2006.  Plaintiff's Second Amended Complaint ("SAC") is being treated as filed on April 21, 2006.  The SAC voluntarily dismisses all Defendants with the exception of McEntee, Seferian, AFSCME, Mariano, and Keller.   With respect to the remaining Defendants, the SAC asserts two causes of action: (1) violation of LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2); and (2) breach of the AFSCME Constitution's Bill of Rights,[3] which the Court has construed as a claim for violation of LMRA § 301(a), 29 U.S.C. § 185(a).

---

[3] Section 2 of the AFSCME Constitution's Bill of Rights reads as follows:

> Members shall suffer no impairment of freedom of speech concerning the operation of this union. Active discussion of union affairs shall be encouraged and protected within this organization.

In addition, Article XII, Section 13 of the AFSCME Constitution provides that:

> [T]he language of this Constitution, including the Bill of Rights of Union members, shall be liberally construed, and shall be interpreted in such a manner designed to fully protect the fundamental rights of members.

8

With respect to the Second Amended Complaint, Defendants filed their first motion to dismiss and for summary judgment on May 8, 2006, and the motion was marked fully submitted on June 21, 2006.[4] Defendants filed a second motion to dismiss and for summary judgment on September 15, 2006.   This motion was marked fully submitted on October 4, 2006.

On September 21, 2006, Commer filed a letter motion to vacate Magistrate Judge Peck's September 15, 2006 memo endorsement of Defendants' letter motion to dismiss Plaintiff's claim for emotional distress damages.[5] The motion was marked fully submitted on October 4, 2006.  Commer also moved, "if necessary," for leave to amend the SAC to assert pendent jurisdiction over a New York State contract law claim.   (Pl.'s Mem. Opp. Summ. J. 14 n.2, Sept. 30, 2006.)

---

[4]  Defendants failed to comply with Local Rule 56.1 when they did not annex to the Notice of Motion a separate, short and concise statement of the material facts as to which the Defendants contend there is no genuine issue to be tried.   Despite this significant oversight, in the interest of judicial economy, the Court has chosen to address the arguments raised in the Defendants' Memorandum of Law in Support of Defendants' May 8, 2006 Motion to Dismiss and for Summary Judgment, in addition to any arguments set forth in Defendants' Memorandum of Law in Support of Defendants' September 15, 2006 Motion to Dismiss and for Summary Judgment.

[5]  On April 13, 2006, this Court entered an order, referring the case to the Clerk of the Court for assignment to a magistrate judge for general pretrial management, including scheduling, discovery, non-dispositive pretrial motions, and settlement.   The case was referred to Magistrate Judge Peck.

9

To accommodate the Plaintiff, this action was accelerated so that if relief were to be granted, it would be in time for Commer to participate in the October 2006 nominating process for the upcoming Local 375 elections. Therefore, the Court issued its informal ruling on the four pending motions, with opinions to follow, at a pretrial conference held on October 10, 2006.[6] The trial commenced the following day.

On October 19, 2006, the jury rendered a verdict for the Defendants on both the LMRA § 301(a) claim and the LMRDA § 101(a)(2) claim.

**The Facts**

In January of 1998, Commer was elected president of Local 375 by its membership, running on a slate of local union candidates that advocated for reform within the union. The slate, including Uma Kutwal ("Kutwal") and others, was successful in replacing the then incumbent officers.   As president of the local, Commer undertook certain actions which became controversial: promotion of certain candidates in local elections; distribution of literature in the name of the local; and retention of outside counsel to

---

[6] Any changes from the Court's informal ruling were appropriately addressed in the jury charge and are incorporated in this written opinion.

10

initiate litigation in connection with a Local 375 group legal service plan.

Commer and the Executive Committee of Local 375 developed differences with respect to certain decisions adopted by the Board of Delegates or the Executive Committee.  In November 1998, Kutwal and other members of the Executive Committee filed charges contending that Commer's conduct violated both the International and the Local 375 Constitutions.

By letter dated November 2, 1998, Commer was provided with a copy of the internal charges by Local 375's secretary, and was advised that the local union's Executive Committee had concluded that he should be suspended with pay, pending an investigation pursuant to Article IX, Section 43 of the AFSCME International Constitution. On November 23, 1998, AFSCME International president McEntee directed that Commer be reinstated as president pending a hearing and determination of the charges.

Because the Local 375 Executive Committee had suspended Commer with pay pending an investigation pursuant to Article IX, Section 43 of the Constitution, an AFSCME Judicial Panel assumed jurisdiction over the charges on or about November 12, 1998, and the matter was designated Judicial Panel Case No. 98-111.

11

Pursuant to Article XI of the AFSCME International Constitution then in effect, the AFSCME International president appointed, with the advice and consent of the AFSCME International Executive Board, a chairperson of AFSCME's Judicial Panel, and eight other members of AFSCME to serve as members of the Judicial Panel to hear and adjudicate charges brought against members of AFSCME in specific designated circumstances.

Pursuant to Article XI, Section 8 of the International Constitution, Judicial Panel Member Robert Lyons (the "Trial Officer") was selected to serve as the Trial Officer in the matter after both parties, Commer and the charging parties, were permitted to strike names from the list of Judicial Panel members. On May 6, 1999 and May 7, 1999, a hearing on the charges against Commer was held by the Trial Officer.

Over the course of the two-day hearing, Commer was provided with the opportunity to present sworn testimony by witnesses and documentation in opposition to each of the charges, to cross-examine the witnesses produced in support of the charges, and to present argument in opposition to the charges. Commer was represented by counsel throughout the course of the internal proceedings before the Judicial Panel.

On June 23, 1999, the Trial Officer issued a written decision outlining the charges against Commer and the evidence that

12

was presented by the parties.  The Trial Officer dismissed fifteen
of the eighteen charges, but determined that the evidence supported
the conclusion that Commer was guilty of three violations of the
respective Constitutions as described in Charges # 6, 14, and 18.

Charge # 6 related to an issue of the Tech Guild News
which contained a report critical of incumbent chapter officers.
The Trial Officer concluded that the issue was intended to
influence a pending election and was funded by union dues, thereby
violating Appendix D, Section 1(A) and Section (B) of the AFSCME
International Constitution, which prohibits subordinate body
endorsement of candidates for elective office.

Charge # 14 related to occasions when reports printed on
Local 375 letterhead were mailed by Commer to the membership of
Local 375 without the approval of the Executive Committee.   The
Trial Officer concluded that this conduct violated Article XIX,
Section 3 of the Local 375 Constitution, which bars distribution of
literature without the approval of the Executive Committee.

Charge # 18 related to the retention of outside counsel
to initiate legal proceedings relating to Local 375's group legal
service plan, an action which was contrary to that taken by the
plan's trustees.   The Trial Officer concluded that this action
constituted an interference with the duties of the trustees in

13

violation of Article X, Section 25 of the AFSCME International Constitution.

The penalty assessed was a formal reprimand, a warning, and an order to make restitution of certain costs associated with Commer's improper conduct.

Commer appealed the June 23, 1999 decision to the full Judicial Panel, which heard the appeal on November 17, 1999. By decision dated December 8, 1999, the full Judicial Panel voted to sustain the decision of the Trial Officer by a vote of five to zero.

Commer then appealed the decision of the full Judicial Panel to the AFSCME International Convention, which was held in Philadelphia in June of 2000. During the 2000 Convention, Commer's appeal was heard before an Appeals Committee ("the Committee"). The Committee is a body of AFSCME members who were elected by their respective local unions to serve as delegates to that Convention and were appointed to review and to make recommendations to the Convention regarding the appeals filed for consideration by the Convention.

The Committee's recommendation to sustain the decision of the full Judicial Panel was presented to the delegate body on the floor during the third day of the AFSCME International Convention.

14

Delegates were permitted to speak in favor and in opposition to the decision of the full Judicial Panel. The decision of the full Judicial Panel was ultimately affirmed by the Convention.

Commer did not make restitution to Local 375, although he sought to arrange a payment plan with deductions from his salary.

In late 1999, the Administrator of District Council 37 announced an election to select a member of Local 375 to serve on the District Council on behalf of the Local. Kutwal and Commer were candidates. According to Kutwal, the eleven standing delegates to District Council 37 from Local 375 were eligible to vote in this election.

Kutwal charged that Commer sent a postcard to the Local 375 members at the Local's expense stating:

Note to Local 375 members nominating and election for Local 375 vice president to DC 37 Executive Board will be on January 19, 2000. Only Local 375 delegates to DC 37 vote. Members should communicate their preferences for office of vice president to the following Local 375 delegates.

After listing the delegates, the card continued:

Messages can be left at the local union office (212) 815-1375.

15

Kutwal brought charges against Commer on January 11, 2000, alleging that the card was construed to endorse Commer's candidacy and had not been authorized by the Executive Committee. Additional charges were filed in February 2000.

The Judicial Panel assumed original jurisdiction over the charges on February 24, 2000, pursuant to Article X and XI of the International Constitution. The decision to assume original jurisdiction was made following a request by Kutwal.

On April 13, 2000, the AFSCME Judicial Panel heard testimony concerning the charges in a case designated Judicial Panel Case No. 00-13. Seferian, as chair of the Panel, rendered his decision on May 1, 2000, concluding that the charges were sustained and stating, "These charges are extremely serious. This is the second time [Commer] has ignored the constitutional process established by the local's constitution simply because it did not suit him." (Seferian Op. 20-21.)

Specifically, Seferian determined that the evidence supported the conclusion that Commer was guilty of the charges, including that:

> (1) Commer violated Article XIX, Section 3 of the Local 375 Constitution by expending union funds and distributing the election mailing in the name of the local union without approval from the Executive Committee or any appropriate body.

16

(2) Commer violated the International Constitution by failing to make restitution to the local union for the costs associated with the printing and distribution of the earlier mailings, as required by the decision of the Judicial Panel in Case No. 98-111.

Seferian suspended Commer from elected union office for a period of two years and ordered restitution. In addition, Commer was required to comply with the prior Judicial Panel decision.

Commer appealed the May 1, 2000 decision to the full Judicial Panel. That appeal was heard on September 7, 2000. By decision dated September 8, 2000, the full Judicial Panel voted to sustain the decision of the Trial Officer by a vote of five to zero.

A third set of charges against Commer were forwarded to the Judicial Panel on February 1, 2001. On May 3, 2001, a hearing on the third set of internal charges was held before Judicial Panel Member Ralph Mendez in New York City.

On June 23, 2001, Trial Officer Mendez issued his decision, determining that the evidence supported the conclusion that Commer was guilty of the charges. The Trial Officer concluded that Commer refused or deliberately failed to comply with the decisions of the Judicial Panel in Case Nos. 98-111 and 00-13 by failing to make repayment to the local union for the mailings that

17

he had made without the authorization required under the Local 375 Constitution and bylaws.

Commer appealed the Trial Officer's decision to the full Judicial Panel. That appeal was heard by the Panel on December 3, 2001. By decision dated December 7, 2001, the full Judicial Panel voted to sustain the decision by a vote of 5-0.

Commer then appealed the decision of the full Judicial Panel to the AFSCME International Convention, which was held in Las Vegas in June 2002. During the 2002 Convention, Commer's appeal was again heard before an Appeals Committee. The Committee's recommendation to sustain the decision of the full Judicial Panel was presented to the delegate body on the floor during the third day of the International Convention. The delegates voted in favor of the Committee's recommendation and as a result, Commer was expelled from the union.

## Discussion

### A. Standards

#### 1. Motion to Dismiss Pursuant to Rule 12(b)(6)

In reviewing a complaint for legal sufficiency under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court takes

18

the material factual allegations as true and draws all reasonable inferences in favor of the plaintiff, dismissing the complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); accord Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176-77 (2d Cir. 2004). For the purposes of a Rule 12(b)(6) motion, all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (quoting Scheuer, 416 U.S. at 236). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd., 375 F.3d at 176 (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

The Court may consider outside documents that are integral to the complaint, regardless of whether those documents are attached to the complaint, so long as the pleader has given notice of them or refers to them. See Gregory v. Daly, 243 F.3d

19

687, 691 (2d Cir. 2001); <u>Schnall v. Marine Midland Bank</u>, 225 F.3d 263, 266 (2d Cir. 2000). "[W]hile courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." <u>Garcia v. Lewis</u>, No. 05 Civ. 1153 (SAS), 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005). When ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint. <u>See Calcutti v. SBU, Inc.</u>, 224 F.Supp.2d 691, 696 (S.D.N.Y. 2002).

### 2.    Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

A party seeking to challenge the existence of jurisdiction may do so under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient. <u>See TM Patents, L.P. v. Int'l Bus. Machs. Corp.</u>, 121 F. Supp.2d 349, 367-68 (S.D.N.Y. 2000); <u>Peterson v. Cont'l Airlines, Inc.</u>, 970 F. Supp. 246, 249 (S.D.N.Y. 1997). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. <u>See Thomson v. Gaskill</u>, 315 U.S.

442, 446 (1942); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). The party asserting subject matter jurisdiction must prove that the Court has such jurisdiction by a preponderance of the evidence. See APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003); Lunney v. United States, 319 F.3d 550, 554 (2d Cir.2003); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

On a motion to dismiss for lack of subject matter jurisdiction, the Court must accept the material factual allegations contained in the complaint. See Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992). Nonetheless, the Court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); Flores S. Peru Copper Corp., 343 F.3d 140, 161 n.30 (2d Cir. 2003); Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002). The Court may decide the matter on the basis of affidavits or other evidence, see Filatech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998), but "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins., 968 F.2d at 198. In other words, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); accord Guadagno v. Wallack Ader Levithan Assocs., 932 F. Supp. 94, 95

21

(S.D.N.Y. 1996); <u>Integrated Utils. Inc. v. United States</u>, No. 96 Civ. 8983(SAS), 1997 WL 529007, at *3 (S.D.N.Y. Aug. 26, 1997).

### 3.   <u>Motion for Summary Judgment Pursuant to Rule 56</u>

In general, a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>SCS Commc'n, Inc. v. Herrick Co., Inc.</u>, 350 F.3d 329, 338 (2d Cir. 2004); <u>see generally</u> 11 James Wm. Moore, et al., <u>Moore's Federal Practice</u> ¶ 56.11 (3d ed. 1997 & Supp. 2004).  The Court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).

To oppose a motion for summary judgment, material facts must be presented.  See <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) ("[T]o defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required . . . to set forth specific facts showing that there is a genuine issue of material fact to be tried.").  Conclusory allegations and

22

blanket denials without reference to admissible evidence is insufficient to comply with the requirements of the rule.  See, e.g., Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000), cert. denied, 531 U.S. 1035 (2000); Cooper v. Gottlieb, No. 95 Civ. 10543(JGK), 2000 WL 1277593, at *4 (S.D.N.Y. Sept. 8, 2000) (holding that a denial without evidence to support the denial is "conclusory" and "wholly inadequate under Local Civil Rule 56.1(d)"); Wenzhou Wanli Food Co., Ltd. v. Hop Chong Trading Co., Inc., No. 98 Civ. 5045(JFK), 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) (noting that "[u]nsupported allegations will not suffice" in responding to a motion for summary judgment).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  Although the burden is on the moving party to demonstrate that there is no genuine issue of material fact, this burden may be discharged by showing "that there is an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325; accord Trebor Sportswear Co. v. Ltd. Stores Inc., 865 F.2d 506, 511 (2d Cir. 1989).

In determining whether a genuine issue of material fact exists, a court must resolve ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v.
Burton, 281 F.3d 12, 18 (2d Cir. 2002).  Thus "[s]ummary judgment
may be granted if, upon reviewing the evidence in the light most
favorable to the nonmovant, the court determines that there is no
genuine issue of material fact and that the movant is entitled to
judgment as a matter of law."  Richardson v. Selsky, 5 F.3d 616,
621 (2d Cir. 1993).  A material fact is one that would "affect the
outcome of the suit under the governing law," and a dispute about
a genuine issue of material fact occurs if the evidence is such
that "a reasonable jury could return a verdict for the nonmoving
party."  Anderson, 477 U.S. at 248; see also R.B. Ventures, Ltd. v.
Shane, 112 F.3d 54, 57 (2d Cir. 1997).

### B.   The LMRDA § 101(a)(2) Claim

#### 1.   The LMRDA § 101(a)(2) Claim Against Defendants Mariano and Keller Has Been Abandoned by the Plaintiff and Is Therefore Dismissed

Commer has conceded that the First Cause of Action (the
LMRDA § 101(a)(2) claim) "is pled only against AFSCME, McEntee, and
Seferian."  (Pl.'s Mem. Opp. Summ. J. 11, June 14, 2006.)  There-
fore, the LMRDA § 101(a)(2) claim is dismissed as against Defen-
dants Mariano and Keller.

24

## 2. Only the LMRDA § 101(a)(2) Claim Against Defendant Seferian is Dismissed Pursuant to Rule 56

LMRDA § 101(a)(2) provides as follows:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis in original). Pursuant to 29 U.S.C. § 412, a private right of action exists for violation of the rights provided pursuant to § 411.

"In order to establish a prima facie case of retaliatory discipline in violation of the LMRDA, a plaintiff must establish that: (1) his conduct constituted 'free speech' under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages." Commer IV, 2004 WL 2797053, at *5 (citing Milne v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, AFL-CIO Local 15, 156 F. Supp. 2d 172, 181 (D.Conn. 2001) (internal quotations omitted)).

25

Furthermore, although the holding of union office is not generally considered a union membership right protected under the LMRDA, this Circuit has recognized an exception whereby removal from union office constitutes an LMRDA violation if it is proven to be part of a "purposeful and deliberate attempt . . . to suppress dissent within the union." <u>Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.</u>, 152 F.3d 178, 184 (2d Cir. 1998) (quoting <u>Schermerhorn v. Local 100, Transport Workers Union of Am., AFL-CIO</u>, 91 F.3d 316, 323-24 (2d Cir. 1996)).

Finally, to support a private action against a union official for violation of LMRDA § 101, the plaintiff must show that the union official "aided, abet[ted], instigate[d], or direct[ed] a wrongful use of union power to deprive a member of his rights." <u>Rosario v. Amalgamated Ladies' Garment Cutters' Union</u>, 605 F.2d 1228, 1246 (2d Cir. 1979); <u>accord</u> <u>Farkas v. Rumore</u>, 881 F. Supp. 884, 889 (S.D.N.Y. 1995) (dismissing LMRDA § 101(a)(1) claim against union president where he played no part in the activities alleged to constitute a violation of the statute).

In its May 27, 2005, opinion, this Court vacated an earlier grant of Defendants' Motion for Summary Judgment based on the new evidence of then-defendant Uma Kutwal's December 24, 2004 affirmation. <u>Commer V</u>, 2005 WL 1250214. As the Court stated in that opinion:

26

[T]he [Kutwal] affirmation appears to raise a factual
issue as to the intent of the Defendants with respect to
the ouster of Commer from the presidency of the union and
the subsequent charges that Commer failed to make the
restitution that was required by the Judicial Panels. No
such evidence by a witness with knowledge was provided to
the Judicial Panels. At the least, a factual issue has
been created which requires that the summary judgment be
vacated.

Id. at *3.

Discovery having now been completed and the Defendants
having twice moved the Court to dismiss the claim on summary
judgment, the Court determines that the evidence establishes an
issue of material fact as to whether Commer's speech was a cause for
defendant AFSCME having taken disciplinary actions against him. The
Court also finds that the evidence creates an issue of material fact
as to whether defendant McEntee aided, abetted, instigated, or
directed a wrongful use of union power to deprive Commer of his
rights. However, the Court finds no evidence to support the claim
that defendant Seferian participated in the wrongful use of union
power against Commer. Accordingly, the § 101(a)(2) claim against
defendant Seferian is dismissed pursuant to Rule 56, Fed.R.Civ.P.

### a. **AFSCME**

The Court finds that statements in the December 24, 2004
Kutwal Affirmation and the September 29, 2006 Kutwal Declaration

27

create an issue of material fact as to whether Commer's speech was a cause for the actions taken against him by defendant AFSCME.

Specifically, in the Affirmation, Kutwal states:

> I can now state that I and others, were used as a vehicle to achieve Roy Commer's ouster from his positions in the union and ultimately his membership by DC37/AFSCME to aid in quashing exposure by Roy Commer of their/friends years of corrupt activities.
>
> Meetings, to arrange; strategy, timing, means and methods of action/charges to enure the elimination of Roy Commer as a Union officer and Members, between; myself and other Local 375 leaders . . . .  In addition, other meetings to aid in accomplishing the same ends; of Local 375 leaders, other than myself, with DC37 and AFSCME leaders began on or about October 1998 and such contact continued by direct meetings, fax, telephone and other means through 2001/Roy Commer's expulsion from Membership.

(Kutwal Affirmation 2, Dec. 24, 2004.)

In his later Declaration, Kutwal discusses his motivation for signing onto the charging petition filed against Commer and calling for Commer's suspension from union office.  He includes among his primary reasons that Commer called for an audit of Local 375 in <u>The New York Times</u> and that Commer attacked other union officers in the Local 375 newsletter.  (Kutwal Decl. ¶ 7, Sept. 29, 2006.)

Kutwal also discusses the encouragement he received regarding the internal charges filed against Commer:  "I played a

28

leading role in the effort to remove Roy Commer from office and then
to expel him from the union.  I was encouraged at every step along
the way by AFSCME officials who were in charge of DC 37 during the
administratorship."    (<u>Id.</u> ¶ 10-11.)    According to Kutwal, he
received such encouragement from the top AFSCME official in New
York, who at the time was acting as a Deputy Administrator monitor-
ing Local 375 on behalf of AFSCME.  (<u>Id.</u> ¶ 11.)  Kutwal further
relates that this same Deputy Administrator repeatedly made
statements to him regarding Commer, such as "Roy Commer is an evil
person and should be removed from the union."  (<u>Id.</u>)  Kutwal also
states that he attended a meeting with another Deputy Administrator
assigned by AFSCME to monitor Local 375, the purpose of which was
to discuss how to remove Commer from union office.  (<u>Id.</u> ¶ 12.)

          Therefore, drawing all inferences against the moving party
and reviewing the evidence in the light most favorable to the non-
moving party, the Court finds that Kutwal's statements create an
issue of material fact as to whether defendant AFSCME retaliated
against Commer for his free speech activity, in violation of LMRDA
§ 101(a)(2).  Dismissal of the claim pursuant to Rule 56, Fed. R.
Civ. P., is therefore unwarranted.

### b.    **McEntee**

          Evidence has been presented that defendant McEntee
appeared before a DC37 delegates meeting on October 29, 1998, at

29

which time he made a statement regarding the destructive impact on the union of members airing the union's "dirty laundry" in the press. (See, e.g., Id. ¶ 5.) It was within days of defendant McEntee's October 29, 1998 statement that the first set of internal union charges were filed against Commer. Kutwal, the original signatory of the charging petition filed against Commer, indicates in his Declaration that after hearing defendant McEntee's October 29, 1998 statement, he was motivated to sign the petition by an article in The New York Times in which Commer called for an audit of Local 375. (Id. at ¶ 7.)

Again, drawing all inferences against the moving party and reviewing the evidence in the light most favorable to the non-moving party, this Court finds that an issue of material fact remains as to defendant McEntee's having aided, abetted, instigated or directed a wrongful use of union power to deprive Commer of his union rights in violation of LMRDA § 101(a)(2). As a result, dismissal of the claim pursuant to Rule 56, Fed. R. Civ. P., is not warranted.

In addition, defendant McEntee's lack of authority defense is unavailing. (See Def.'s Mem. Supp. Summ. J. 16 n.2, May 8, 2006.) A retaliatory action by a union officer need not be within the officer's scope of authority in order to constitute a violation of § 101(a)(2). See Rosario, 605 F.2d at 1246 ("Nor, in the case of union officials, should liability be limited to their acts within the scope of their authority. The Act was designed 'to curb the

30

power of overweening union officials' generally, including abuse of their positions or inducement of other officials to do so."). Therefore, defendant McEntee's lack of authority to intervene in the union's internal charge process does not shield him from any liability for the alleged violation of § 101(a)(2).

### c.  **Seferian**

In contrast to the evidence submitted regarding defendant McEntee, Commer has failed to provide any evidence to support the conclusion that defendant Seferian has aided, abetted, instigated, or directed the wrongful use of union power to deprive Commer of his union rights in violation of LMRDA § 101(a)(2).

First, there is absolutely no mention of Seferian and almost no mention of the Judicial Panel process in either the December 24, 2004 Kutwal Affirmation or the September 29, 2006 Kutwal Declaration. Kutwal's only recent sworn statement regarding the Judicial Panel is: "I believe . . . that the whole Judicial Panel process . . . was preplanned." (Kutwal Decl. ¶ 13, Sept. 29, 2006.) However, Kutwal provides no specific facts to support his belief or to show that defendant Seferian participated in the alleged retaliatory actions against Commer in any way.

Second, as previously found by this Court, evidence was put before the Judicial Panel to support the charges against Commer.

31

See Commer IV, 2004 WL 2797053, at *6; Commer I, 121 F. Supp. 2d at 397-99.  Because Commer has not sought to challenge the process by which the charges were heard or decided by the Judicial Panel Chairman and the Full Judicial Panel under LMRDA § 101(a)(5), the "Court is not to look beyond the decision itself so as long as there is 'some evidence' to support the charges."  See Commer IV, 2004 WL 2797053, at *6 n.3 (quoting Commer I, 121 F. Supp. 2d at 398).

Finally, Commer has failed to present evidence establishing that defendant Seferian has acted, as Chairperson of the AFSCME Judicial Panel, to ratify any alleged retaliatory actions taken against Commer by any of the other defendants.  The Second Circuit has held that such ratification occurs only if the defendant "affirmed the discipline imposed on plaintiff[] with full knowledge that it was . . . in violation of the LMRDA."  Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union, 817 F.2d 967, 973 (2d Cir. 1987).  However, mere allegations by the plaintiff of unlawful discipline, such as the allegations that Commer has levied with regard to the union actions taken against him, are insufficient to establish the requisite knowledge to support ratification.  Id.

Therefore, even when drawing all inferences against the moving party and reviewing the evidence in the light most favorable to the non-moving party, the Court finds that no issue of material fact remains as to whether defendant Seferian aided, abetted, instigated or directed a wrongful use of union power to deprive

32

Commer of his union rights, in violation of LMRDA § 101(a)(2).
Accordingly, summary judgment is entered in favor of defendant
Seferian and the LMRDA § 101(a)(2) claim against him is dismissed
pursuant to Rule 56, Fed. R. Civ. P.

> **3.   Dismissal of the Claim Against Defendants
> McEntee and AFSCME Is Not Justified By the
> Doctrine of Res Judicata or the Statute of
> Limitation**

### a.   Res Judicata

In Commer III, this Court concluded that as a result of
the stipulated consent order dismissing the related case of Commer
v. Keller, 98 Civ. 7808(AGS), the LMRDA § 101(a)(2) claim against
defendants Keller and Mariano was barred by the doctrine of res
judicata.   See 283 F. Supp. 2d at 999-1000.   Defendants have now
argued that the same conclusion is true with respect to the
remaining Defendants because they are privies of the Commer v.
Keller defendants.   (Def.'s Mem. Supp. Summ. J. 11-12, May 8, 2006.)

"Res judicata bars litigation of any claim for relief that
was available in a prior suit between the same parties or their
privies, whether or not the claim was actually litigated."   Irish
Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)
(citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326-27 n.5
(1979); Balderman v. U.S. Veterans Admin., 870 F.2d 57, 62 (2d Cir.
1989)) (emphasis added).   According to the Second Circuit, literal

33

privity is not a requirement for the doctrine of <u>res judicata</u> to apply.  Rather, "a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'"   <u>Monahan</u>, 214 F.3d at 285 (quoting <u>Alpert's Newspaper Delivery, Inc. v. The N.Y. Times Co.</u>, 876 F.2d 266, 270 (2d Cir. 1989)); <u>accord</u> <u>Cent. Hudson Gas & Electric Corp. v. Empresa Naviera Santa, S.A.</u>, 56 F.3d 359, 367-68 (2d Cir. 1995) (stating privity inquiry as "whether a party control[led] or substantially participate[d] in the control of the presentation on behalf of a party to the prior action") (internal quotation omitted).

Defendants have offered no support for the conclusion that the <u>Commer v. Keller</u> Defendants were vested with the requisite authority of representation to establish a relationship of privity, nor that Defendants AFSCME and McEntee controlled or participated in the earlier action in any way.   Therefore, the Defendants' argument that the LMRDA § 101(a)(2) claim against Defendants McEntee and AFSCME is barred by the doctrine of <u>res judicata</u> fails as a matter of law.

## b.   **Statute of Limitation**

To the extent that Commer's LMRDA § 101(a)(2) claim is based on the original union charges filed in November 1998 or February 1999 and the resulting Judicial Panel decision of June 23,

34

1999, Defendants have argued that the claim is barred by the three-year statute of limitation. See Def.'s Mem. Supp. Summ. J. 12-13, May 8, 2006; Schermerhorn v. James, No. 96 Civ. 980(JSR), 1997 WL 681345, at *3 (S.D.N.Y. Oct. 31, 1997) (applying New York's three year personal injury statute to LMRDA § 101(a)(2) claim). Since the claim relates back to the original complaint filed on October 18, 2000, it is not barred by the applicable statute of limitation and Defendants' argument on this ground fails.

Rule 15(c)(2), Fed. R. Civ. P., provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The Second Circuit recently articulated the standard for satisfying Rule 15(c)(2) in Slayton v. American Express Co.:

> Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading. Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.

460 F.3d 215, 228 (2d Cir. 2006) (internal quotation omitted); accord O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 68 (2d Cir. 2002); Lind v. Vanguard Offset Printers, Inc., 857 F. Supp. 1060, 1068 (S.D.N.Y. 1994).

35

Defendants have asserted that neither the original complaint filed on October 18, 2000, "nor any restatement of that pleading (prior to the Second Amended Complaint in late March 2006) has ever made reference to or alluded to challenging the original internal union charges or the resulting judicial panel decision under any federal or state statute." (Def.'s Reply Mem. 6, Oct. 2, 2006.) Yet Commer's original complaint filed on October 18, 2000, includes the following:

> 1998 Defendants McEntee, Seferian, . . . . begin a cooperative process of suppressing the Member's freedom of speech by actively meeting and or planning the means and methods to stifle the Member's freedom of speech and political dissent in Local 375 through various means and methods. . . .
>
> Plans included but were not limited to: . . . bringing multiple series of charges with no basis and harassment of those officers of the Union who refuse to join in or allow the cover-up of defendants illegal activities.
>
> . . . Sets of charges were brought/prosecuted/judged against plaintiff by defendants.
>
> 1999 Defendants continue to bring and prosecute sets of multiple charges using their control of internal Union processes, judicial, etc. to grow the chill on the Member's freedom of speech and political dissent. Defendants set up/allow illegal committee to deny Member's freedom of speech (newsletters) and political dissent. . . .
>
> By reason of the aforementioned acts defendants did conduct the affairs of the Unions in a pattern of illegal activity and conspired together to violate provisions of the LMRDA.

(Compl. 13-20.)

36

As already stated by the Second Circuit with respect to Commer's LMRDA § 101(a)(2) claim in the original complaint, "Commer clearly satisfied his minimal pleading burden of 'giv[ing] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Commer v. Giuliani, 34 F. App'x at 805 (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). This Court finds that the relation back doctrine of Rule 15(c), Fed. R. Civ. P., applies and that Commer's LMRDA § 101(a)(2) claim against Defendants AFSCME and McEntee is not time barred.

## C.  The LMRA § 301 Claim

### 1.  The LMRA § 301 Claim as Against the Individual Defendants Is Dismissed

In the Second Amended Complaint, Commer seeks two forms of relief: (1) equitable relief, including reinstatement to membership in both AFSCME and Local 375 and restoration of the right to run for office within the union; and (2) a monetary award, including compensatory damages (including for emotional distress), punitive damages, and attorney's fees and costs.

It is well settled in this district that individual union officials are not subject to claims for damages under LMRA § 301. See, e.g., Farrell v. Hellen, 367 F. Supp. 2d 491, 505 (S.D.N.Y. 2005) (citing Monaco v. Smith, No. 00 Civ. 5845 (RMB), 2004 WL 203009, at *12 (S.D.N.Y. Feb. 2, 2004); Madden v. Int'l Assoc. of

37

Heat & Frost Insulators & Asbestos Workers, 889 F. Supp. 707, 713 (S.D.N.Y. 1995)); Rosenthal v. Roberts, No. 04 Civ. 5205(DLC), 2005 WL 221441, at *5 (S.D.N.Y. Jan. 28, 2005) (citing Shea v. McCarthy, 953 F.2d 29, 32 (2d Cir. 1992)). Although such union officials may be subject to equitable relief in their official capacities, see, e.g., Farrell, 367 F. Supp. 2d at 505; Monaco, 2004 WL 203009, at *12; Madden, 889 F. Supp. at 712-13, none of the individual defendants in this action has the authority to reinstate Commer's membership in AFSCME and Local 375.[7]

Since the relief sought is not available from the individual defendants under LMRA § 301, this claim against McEntee, Seferian, Mariano, and Keller is dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P.

## 2. The Remaining Claims for Punitive and Emotional Distress Damages Under LMRA § 301 Are Also Dismissed

With respect to Commer's claims for punitive damages and damages for emotional distress, such relief is not available pursuant to LMRA § 301. See Monaco, 2004 WL 203009, at *5 (citing

---

[7] Pursuant to the AFSCME International Constitution, Art. III, Section 7, anyone expelled from membership "may thereafter be admitted to membership or offered such employment only with the prior approval of the International Executive Board." Furthermore, defendant Mariano is no longer an officer or even a member of AFSCME or any of its affiliates and therefore is not an appropriate target for equitable relief in this action.

38

Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n, 36 F.3d 235, 240 (2d Cir. 1994); Capitano v. Laborers Int'l Union of N. Am., No. 97-CV-0035A, 2000 WL 424202, at *14 (W.D.N.Y. Mar. 31, 2000)). Therefore, Commer's punitive and emotional distress damages claims against AFSCME for violation of LMRA § 301 are also dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

> **3. The Remaining LMRA § 301 Claim As Against Defendant AFSCME Is Limited to Those Actions Taken Prior to May 1, 2000, Due to the Court's Limited Subject Matter Jurisdiction**

LMRA § 301 provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185.

The law is clear that a union constitution is considered a contract between labor organizations for the purposes of this statute, and that a union member may sue under § 301 for alleged

39

violations of a union constitution as a third-party beneficiary of that contract. See, e.g., Woodell v. Int'l Bhd. of Electrical Workers, Local 71, 502 U.S. 93, 499-500 (1991) ("[U]nion constitutions are an important form of contract between labor organizations."); Shea, 953 F.2d at 31 ("Wooddell having thus answered in the affirmative the question whether union members may sue their union under section 301(a) for violations of the union constitution . . ."); Rosenthal, 2005 WL 221441, at *5 ("Individual union members may also sue union officials under Section 301 for alleged violations of a union constitution . . . .").

The law is also clear, however, that to bring a claim pursuant to this statute, the plaintiff must be a private employee. See, e.g., Rosenthal, 2005 WL 221441, at *6 ("[C]ourts have repeatedly held that federal district courts do not have subject matter jurisdiction over claims brought by public employees under Section 301 of the LMRA."); Cunningham v. Local 30, Int'l Union of Operating Engineers, AFL-CIO, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) (same). For the purposes of the statute, courts within this district have considered an employee of the City of New York to be a public, and not a private, employee. See, e.g., Rosenthal, 2005 WL 221441, at *5; Cunningham, 234 F. Supp. 2d at 391; Naum v. City of New York, No. 94 Civ. 5747(DAB), 1996 WL 140305, at *2 (S.D.N.Y. Mar. 28, 1996).

When Commer filed the original complaint in this action in October 2000, he was employed by the City of New York and therefore considered a public employee for the purposes of the LMRA. However, Commer had been employed by the union and was therefore a private employee from the time the union began to take the alleged retaliatory actions against him in 1998 until he was removed from union office on May 1, 2000.  Accordingly, the remaining LMRA § 301 claim against defendant AFSCME is dismissed as to conduct occurring after May 1, 2000, due to lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.

## 4. Dismissal of the Remaining LMRA § 301 Claim As Against Defendant AFSCME Is Not Justified

Defendants have asserted several alternative arguments in support of their motions to dismiss the LMRA § 301 claim.  First, as with the LMRDA § 101(a)(2) claim, Defendants have argued that the LMRA § 301 claim is barred by the doctrine of res judicata. (See Def.'s Mem. Supp. Summ. J. 11-12, May 8, 2006.)  For the same reasons discussed with respect to the LMRDA § 101(a)(2) claim, this argument again fails due to the Defendants' inability to establish privity with the Commer v. Keller defendants.  (See Part B.3.a.)

Second, as with the LMRDA § 101(a)(2) claim, Defendants have again argued that the LMRA § 301 claim is barred by the six-year statute of limitation.  See Def.'s Mem. Supp. Summ. J. 12-13, May 8, 2006; O'Hare v. Gen. Marine Transp. Corp., 740 F.2d 160, 167

41

(2d Cir. 1984), cert. denied, 469 U.S. 1212 (1985) (applying New York's six-year statute of limitation to LMRA § 301 claim); Tobin v. Barry, 678 F. Supp. 1018, 1022 (S.D.N.Y. 1987) (same). Specifically, with respect to the LMRA § 301 claim for breach of the AFSCME Constitution's Bill of Rights, the Defendants assert that "[t]here has never been a claim . . . that any provision of the International Constitution was violated." (Def.'s Mem. Supp. Summ. J. 19, May 8, 2006.) Although Commer did not specify the Bill of Rights in the original complaint filed on October 18, 2000, Commer did allege in the second cause of action that "defendants did conduct the affairs of the Unions in a pattern of illegal activity and conspired to violate provisions of the Union's Constitutions." (Compl. 21.) Therefore, since the LMRA § 301 claim relates back to the original complaint filed on October 18, 2000, pursuant to the relation back doctrine of Rule 15(c)(2), Fed. R. Civ. P., the claim is not barred by the applicable statute of limitation and Defendants' argument on this ground fails. (See Part B.3.b.)

Finally, Defendants have argued that the law of the case doctrine precludes the LMRA § 301 claim. (Def.'s Mem. Supp. Summ. J. 20-21, May 8, 2006.) Defendants have acknowledged that this doctrine "ordinarily forecloses relitigation of issues expressly or impliedly decided by the appellate court." Field v. United States, 381 F.3d 109, 114 (2d Cir. 2004) (quoting United States v. Quintieri, 306 F.3d 1217, 1229 (2d Cir. 2002)) (emphasis added). However, the issue of whether the Defendants breached the Bill of

42

Rights to the AFSCME Constitution has not been expressly or impliedly decided by the Circuit. See Commer v. Giuliani, 34 F. App'x 802.

Furthermore, Defendants have also acknowledged that the law of the case doctrine provides for revisiting prior rulings under certain circumstances, including the availability of new evidence. See, e.g., United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (citing Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir.1983); United States v. Fernandez, 506 F.2d 1200, 1203 (2d Cir.1974)). Therefore, even if the issue had been decided by the Circuit in Commer v. Giuliani, 34 F. App'x 802, the doctrine still would not apply in light of the new evidence put forward in the December 24, 2004 Kutwal Affirmation and the September 29, 2006 Kutwal Declaration. Accordingly, the law of the case doctrine does not apply here and dismissal of the LMRA § 301 claim is not warranted.

## D. Plaintiff's Motion for Leave to Amend the Complaint is Denied

Commer claims that he asserted his LMRA § 301 claim under the Court's pendent jurisdiction over New York State contract law. (Pl.'s Mem. Opp. Summ. J. 14 n.2, Sept. 29, 2006.) He has acknowledged, however, that he did not assert such pendent jurisdiction in the Second Amended Complaint, but rather in a Memorandum of Law in opposition to Defendants' May 8, 2006 Motion to Dismiss and for

43

Summary Judgment.  (<u>Id.</u>)  As a result, Commer has moved, "if
necessary," for leave to amend the complaint to now assert such
pendent jurisdiction.  (<u>Id.</u>)


As stated in <u>Berman v. Parco</u>:

> [T]he Court may deny a motion to amend when the movant
> knew or should have known of the facts upon which the
> amendment is based when the original pleading was filed,
> particularly when the movant offers no excuse for the
> delay. . . . Leave to amend a complaint will generally
> be denied when the motion to amend is filed solely in an
> attempt to prevent the Court from granting a motion to
> dismiss or for summary judgment, particularly when the
> new claim could have been raised earlier.


986 F.Supp. 195, 217 (S.D.N.Y. 1997) (quoting M. Silberberg, <u>Civil
Practice in the Southern District of New York</u> § 6.26).  Similarly,
courts in this District have ruled it inappropriate to raise new
claims in submissions in opposition to summary judgment.  <u>See</u>,
e.g., <u>Porter v. N.Y. Univ. Sch. of Law</u>, No. 99 Civ. 4693(TPG), 2003
WL 22004841, at *12 (S.D.N.Y. Aug. 25, 2003); <u>Beckman v. U.S.
Postal Serv.</u>, 79 F. Supp. 2d 394, 407-09 (S.D.N.Y. 2000) (collect-
ing cases).  Therefore, Commer's motion to amend the complaint to
include a state law claim in exercise of this Court's pendent
jurisdiction is denied.

44

## E. **Plaintiff's Motion to Vacate the Order Dismissing the Emotional Distress Claims Is Granted**

On April 13, 2006, this Court entered an order, referring the case to the Clerk of the Court for assignment to a Magistrate Judge for general pretrial management, including scheduling, discovery, non-dispositive pretrial motions, and settlement. The case was referred to Magistrate Judge Peck.

In a September 12, 2006 letter to Judge Peck, Defendants argued for dismissal of Commer's claim for emotional distress damages on the grounds that such damages are: (1) not recoverable under LMRA § 301; and (2) not recoverable under LMRDA § 101 absent a showing of physical injury based on "competent proof" of causation in the form of medical testimony. (Def.'s Ltr. 1-2.) In their letter, Defendants claimed that as a result of Commer's failure to follow certain discovery obligations, he would not be able to call any medical witnesses at trial and that the emotional distress claim should therefore be dismissed as a matter of law. Judge Peck memo endorsed Defendants' letter, granting the application and dismissing Plaintiff's emotional distress claim "in its entirety." Commer subsequently filed a motion with this Court to vacate Judge Peck's order on several grounds, including that: (1) Judge Peck had no authority to entertain a motion to dismiss a claim; (2) Judge Peck made the decision without reviewing Plaintiff's medical records; (3) Plaintiff's due process rights were violated; and (4) the dismissal was a legal error.

45

By statute, a judge may designate a magistrate judge to hear and determine any pretrial matter, with the exception of certain enumerated dispositive motions, including motions for summary judgment and to dismiss for failure to state a claim upon which relief can be granted. See 28 U.S.C. § 636(b)(1)(A); see also Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 90 (S.D.N.Y. 2002); Katz v. Molic, 128 F.R.D. 35, 39 (S.D.N.Y. 1989). While a magistrate judge may hear dispositive pretrial motions, he or she may only submit proposed findings of fact and recommendations for disposition of the matter which the district judge then reviews de novo. See 28 U.S.C. § 636(b)(1)(B); Hoar, Inc., 900 F.2d at 525; Mopex, Inc., 215 F.R.D. at 90.

Construing Defendants' September 12, 2006 letter to Judge Peck as a motion to dismiss, the letter constitutes a dispositive motion outside the scope of the magistrate's authority to determine, beyond providing proposed findings of fact and recommendations for disposition to the Court. Therefore, the memo endorsement of Defendants' letter was outside the scope of Judge Peck's authority. Accordingly, the order dismissing Commer's claim for emotional distress damages in its entirety is vacated.

Additionally, despite Commer's discovery obligation shortfalls, he still has the ability to present evidence at trial sufficient to support a claim for emotional distress damages

46

pursuant to violation of LMRDA § 101(a)(2).[8] Existing case law supports the position that damages for emotional distress may be awarded under LMRDA § 101 upon a showing of physical injury that is causally connected to the alleged wrongdoing. See Petramale v. Local No. 17 of Laborers' Int'l Union of N. Am., 847 F.2d 1009, 1012 (2d Cir. 1988) ("Claims of emotional distress . . . arising from violations of LMRDA must be supported by a physical manifestation of emotional distress.") (internal quotation omitted); Rodonich, 817 F.2d at 978 (same); Rosario, 605 F.2d at 1245 ("plaintiff must offer some evidence that the reputed injury was causally connected to the defendant's wrongdoing").

It is also the law of this Circuit that while the plaintiff must be able to show some physical manifestation of his emotional distress in order to permit an award for damages, such a showing is not dependent on the proffer of medical testimony. See Tusino v. Int'l Bhd. of Teamsters, 169 F.App'x 39, 43 (2d Cir. 2006) (unpublished opinion) (upholding but reducing emotional distress damage award for violation of LMRDA § 101 based on testimony of plaintiff and his daughter, but "no objective testimony other than photographs and medical charts"); Petramale, 847 F.2d at 1012 (reversing district court's grant of judgment n.o.v. for failure to meet burden of proof where no expert medical testimony was offered); Rodonich, 817 F.2d at 977 (upholding jury

---

[8] This Court has already determined that such relief is not available pursuant to LMRA § 301 and has dismissed that claim accordingly. See Part C.2

instruction requiring LMRDA § 101 emotional distress claim to be
based on "the particular plaintiff's physical condition or medical
evidence") (emphasis added). The Second Circuit has indicated that
in circumstances where there is no expert medical testimony offered
in support of an emotional distress claim arising from violation of
LMRDA § 101, defendants have "ample opportunity to challenge
[Plaintiff's] testimony on cross-examination," thereby discounting
any concerns of such testimony being "self-interested." Petramale,
847 F.2d at 1012.

Therefore, Commer is not required to present medical
testimony at trial in order to sufficiently support his claim for
emotional distress damages pursuant to violation of LMRDA § 101.

**Conclusion**

For the reasons set forth above, Defendants' motions to
dismiss and for summary judgment are granted in part and denied in
part, Plaintiff's motion to vacate Judge Peck's order is granted,
and Plaintiff's motion for leave to amend the Second Amended
Complaint is denied.

It is so ordered.

New York, NY
November 9 , 2006

ROBERT W. SWEET
U.S.D.J.

48